UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                              Case No.: 1-02-17966-dem

BENJAMIN HIRSCH,                                    Chapter 11

                Debtor.
-------------------------------------------------------x
BENJAMIN HIRSCH,

                Plaintiff,

    -against-                                    Adv. Proc. No. 1-05-01183-dem

DEPARTMENT OF THE TREASURY-
INTERNAL REVENUE SERVICE,

                Defendant.
-------------------------------------------------------x

## DECISION AND ORDER UPON VALUATION HEARING

Appearances:

Beth E. Spickler, Esq.
Stein Riso Mantel, LLP
Attorneys for Debtor/Plaintiff
254 South Main Street, Suite 507
New City, New York 10956

Joseph J. Haspel, Esq.
Attorney for Debtor/Plaintiff
40 Matthews Street, Suite 201
Goshen, NY 10924

Bonni J. Perlin, Esq.
Trial Attorney, U. S. Department of Justice, Tax Division
Attorneys for Defendant
Civil Trial Section, Northern Region
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044

Gary Kushner, Esq.
Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP
Attorneys for Nachama Hirsch
330 Old Country Road
P.O. Box 31
Mineola, NY 11501

David Carlebach, Esq.
Atttorney for the Torah Academy High School of Brooklyn
40 Exchange Place, Suite 306
New York, New York 10005

Paul I. Krohn, Esq.
Attorney for Receiver
40 Clinton Street
Brooklyn, NY 11202

Linda A. Riffkin, Esq.
Trial Attorney
Of'fice of the United States Trustee
271 Cadman Plaza East, Suite 4925
Brooklyn, NY 11201

DENNIS E. MILTON
United States Bankruptcy Judge

On or about June 26, 2002 (the "petition date"), Benjamin Hirsch ("Hirsch") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On October 24, 2002, the United States Internal Revenue Service (the "IRS") filed a proof of claim in this bankruptcy case asserting a secured claim of $912,942.82 (the "IRS Proof of Claim"). On or about April 5, 2005, Hirsch filed an application for an order pursuant to Section 502 of the Bankruptcy Code disallowing, expunging, modifying and/or reducing the IRS Proof of Claim (the "Application").

This Decision follows the Valuation Hearing concerning certain Hirsch-owned properties which are the subject of liens belonging to the IRS. For the reasons set forth below,

the Court finds that the real property located at 1450 Ocean Avenue, Brooklyn, New York (the "1450 Property") had a minimum present market value of $800,000.00; that the real property located at 2115 Avenue I, Brooklyn, New York (the "2115 Property") had a minimum present market value of $825,000.00; and that the real property located at 2914 Avenue I, Brooklyn, New York (the "2914 Property") had a present market value of $20,000.00. The IRS Proof of Claim is allowed as filed. The Application is denied in all respects.

        A.        The IRS Liens and Proof of Claim

Prior to the petition date, on or about September 21, 2000, the IRS recorded notices of federal tax liens (the "IRS liens") with the Register's Office of Kings County in Brooklyn concerning Hirsch's pre-petition federal income tax liabilities for 1992 through 1997. The balance of the subject liabilities, with accrued interest, and penalties, was $912,942.82 as of the petition date. To the extent there is property of sufficient value to secure post-petition interest, the IRS claimed that the amount owed and covered by the tax liens was $1,096,740.78, plus statutory interest and additions from December 31, 2005. Among the properties which Hirsch owned to which the IRS liens attached were the 1450 Property, the 2115 Property and the 2914 Property.

On or about June 4, 2001, after the IRS had filed its notices of federal tax lien for Hirsch's 1992 through 1997 federal income tax liabilities and more than one year before the petition date, Hirsch entered into a lease agreement with Yeshiva Ruach Hatorah with respect to the 1450 Property.

As noted above, on October 24, 2002, the IRS filed the IRS Proof of Claim, in which it asserted a secured claim of $912,942.82. On or about April 5, 2005, Hirsch filed the

Application for an order pursuant to Section 502 of the Bankruptcy Code disallowing, expunging, modifying and/or reducing the IRS Proof of Claim. In the Application, Hirsch claimed that any of his liability to the IRS was secured only to the extent of his assets, which he valued as follows:

| Asset | Value |
|---|---|
| The 1450 Property | $250,000.00 |
| The 2115 Property | $500,000.00 |
| The 2914 Property | $ 2,500.00 |

In the Application, Hirsch asserted that because he had no other assets of value, the IRS Proof of Claim should be modified and reclassified as a secured claim in the amount of $149,640.50 and a general unsecured claim in the amount of $763,293.32, and that the IRS liens be modified accordingly.

On or about May 5, 2005, the IRS filed its response to the Application. In its response, the IRS stated that it lacked information regarding the truth of the allegations and requested an opportunity to take discovery with respect to Hirsch's allegations before the Court ruled on the application. The Court deemed the Application and response to constitute a complaint and answer in an adversary proceeding and issued a pretrial scheduling order.

B. The IRS Claim and Hirsch's Third Amended Disclosure Statement

On or about November 17, 2005, Hirsch filed his Third Amended Disclosure Statement (the "Third Amended Disclosure Statement") concerning his Second Amended Plan of Reorganization (the "Second Amended Plan"). In the Second Amended Plan, Hirsch proposed to sell the properties which he owned. With regard to the 1450 Property, Hirsch stated that upon confirmation of the Second Amended Plan, the Yeshiva Ruach Hatorah had agreed to purchase

the property for $525,000. Hirsch claimed this "represented the appraised value [of the property] without the leasehold encumbrance." Valuation Hearing Exhibit B at 4. With regard to the 2115 Property, Hirsch stated that upon confirmation of the Second Amended Plan, his brother, Yakov Hirsch had agreed to purchase the property for $500,000.00. Hirsch claimed that the purchase price "represents the property's value." Id. at 5.

On December 15, 2005, the IRS and Nachama Hirsch, the debtor's wife, filed separate objections to the adequacy of the Third Amended Disclosure Statement. Each objector argued that Hirsch's valuation of the properties was artificially low. On December 20, 2005, the Court conducted a hearing on the adequacy of the Third Amended Disclosure Statement and a final pretrial conference in this adversary proceeding. On that date, the Court determined that it was necessary to conduct a valuation hearing to resolve the issues raised in the adversary proceeding and by the objections to the Third Amended Disclosure Statement.[1]

At the December 20, 2005 hearing, the Court granted the request of Mrs. Hirsch to participate in the valuation hearing, which it scheduled for January 9, 2006. On January 9, 2006, the valuation hearing commenced. By letter dated January 11, 2006, counsel for the Torah Academy High School of Brooklyn (the "Torah Academy") sought permission to intervene in the adversary proceeding. Although the Court denied this application as untimely insofar as counsel sought to present affirmative evidence, the Court permitted counsel for the Torah Academy to sit at counsel table. After the taking of testimony on January 13, January 20, and January 23, 2006, the valuation hearing concluded.

---

[1] The Court reasoned that if its determination of the value of the respective properties was higher than that the debtor proposed, Yeshiva Ruach Hatorah and Yakov Hirsch would have the opportunity to reconsider whether they intended to consummate their purchases of the subject properties at the higher value based prices.

At the valuation hearing, Hirsch claimed that the 1450 Property had a maximum present market value of $525,000; that the 2115 Property had a present market value of $500,000; and that the 2914 Property had a present market value of $1,000.00. The IRS claimed that the 1450 Property had a minimum present market value of $850,000; that the 2115 Property had a minimum present market value of $900,000; and that the 2914 Property had a present market value of $20,000.00.   Nachama Hirsch claimed that the 1450 Property had a minimum present market value of $800,000; and that the 2115 Property had a minimum present market value of $825,000.

Four witnesses testified at the valuation hearing.  Mauro M. Gabriele ("Gabriele") of The Gabriele Appraisal Company testified as an expert witness on these issues for Hirsch. Michael Dean ("Dean") testified as an expert witness in support of the IRS' claimed valuations. Ronald Haberman ("Haberman") testified as an expert witness in support of Mrs. Hirsch's objection and in support of her claimed valuation of the properties.    Hirsch also testified with respect to these claimed valuations.

## DISCUSSION

The Court Properly Admitted the Testimony of Gabriele, Dean and
Haberman Into Evidence as the Testimony of Expert Witnesses.

Rule 702 of the Federal Rules of Evidence provides the grounds for admissibility of expert witness testimony.  Rule 702 provides:

> If scientific, technical or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert
> by knowledge, skill, experience, training, or education,
> may testify thereto in the form of an opinion or otherwise,
> if (1) the testimony is based upon sufficient facts or data,

>(2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reasonably to the facts of the case

Fed. R. Evid. 702.

The Court found that each of the non-party witnesses at the valuation hearing were experts whose qualifications and purported expertise satisfied the standards of relevance and reliability under Daubert v. Merrill Dow Pharmeceuticals, Inc., 509 U.S. 579, 597 (1993), and its progeny. In his post hearing submission, counsel for Hirsch challenged that Dean and Haberman failed to meet the Daubert qualifications. He claimed that Dean's lack of qualifications, licensing certification and membership in professional organizations made him incapable of satisfying Daubert. Rather than challenging Haberman's credentials, counsel for Hirsch contended that Haberman's methodology and improper use of a form designed for single family dwellings and use by mortgagees only  - as opposed to a form for use with income producing properties - made his testimony incapable of meeting the Daubert reliability criteria. As seen below, each of these claims is without merit.

The admissibility of expert testimony under Rule 702 requires the Court to make two preliminary determinations. The Court must decide whether expert testimony could assist the trier of fact in understanding the evidence or determining a fact in issue. Second, the court must determine whether the witness called is properly qualified to give the testimony sought. The witness may be qualified as an expert on the bases of either knowledge, skill, experience, or education, or a combination of any of these factors. Riegel and Riegel v. Medtronic, Inc., 451 F.3d 104, 127 (2d Cir.2006). Here, the Court found that the testimony of experts in the field of real estate valuation could assist the Court as the trier of fact both in understanding the evidence

and determining a fact in issue. With respect to understanding the evidence, the expert witnesses could and did assist the Court in understanding the individual components that are considered in determining a valuation for real property. On the question of assisting the Court in determining a fact in issue, each of the witnesses had to some extent personally observed the condition of the subject properties and could provide assistance to the Court on factual issues relating to those properties.

With regard to the debtor's challenge to Dean and Haberman individually, whether as to the credentials (Dean) or the methodology (Haberman), the Court finds these claim are without merit.   Dean testified that he had been employed with the IRS as a Valuation Specialist, primarily in real estate appraisals, since 1997. His responsibilities included the preparation of appraisals of multi-family and commercial properties in New York, New Jersey and Connecticut. Tr. I at  104[2]. Specifically, Dean's resume reflected that from 1977 to 1985, he had worked as an appraiser for the Seamens Bank for Savings in New York City, as chief appraiser for People's Bank in Hawthorne, New York, and as a commercial mortgage appraiser for Eastern Savings Bank in Scarsdale, New York. See Valuation Hearing Exhibit D. Although there was a gap in his employment, his overall work experience and academic credentials amply supported the Court's exercise of discretion in admitting him as an expert witness. Moreover, Dean's testimony reflected his understanding of the principles and terms used in the appraisal of real estate, as well as his ability to understand and make adjustments for the various criteria utilized in making a determination of the valuation of real property.

---

[2]  Tr. I refers to the transcript of the valuation hearing held on January 9, 2006. Tr. II refers to the transcript of the valuation hearing held on January 13, 2006.  Tr. III refers to the transcript of the valuation hearing held on January 20, 2006.  Transcript IV refers to the transcript of the valuation hearing held on January 23, 2006.

Hirsch does not challenge Haberman's credentials. Rather, he contends that Haberman's methodology and improper use of a form designed for single family dwellings and use by mortgagees only - as opposed to a form for use with income producing properties - made his testimony incapable of meeting the Daubert reliability criteria. This challenge exults form over substance. Hirsch's challenge ignores the fact that what it is important to the Court in its search for the truth is not the nature of the form utilized but the information contained therein. In that respect, the Court finds Haberman's appraisal information and testimony superior to and more credible than that which Gabriele, Hirsch's expert, proffered.

With respect to Hirsch's testimony as to the value of the 2115 Avenue I property, the Court finds Hirsch a competent witness to testify as to his understanding of the value of the property which he owned and at which he resided. An owner is competent to give his opinion of value, with knowledge of its condition and its purchase price. South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas, 614 F.2d 1056, 1061 (5th Cir. 1980); Matter of Davis, 17 B.R. 547, 548 (Bankr. W. D. Mo. 1982).

A summary of the testimony of each of these witnesses concerning the valuation of the subject properties follows.

    1.    The 1450 Property

Gabriele testified as Hirsch's expert witness on valuation. Gabriele testified that he was a real estate appraiser based in Mamaroneck, New York. He holds a Master's Degree in real estate evaluation from New York University, is a general certified appraiser and has been engaged in the appraisal of real estate for twenty-one years. Tr. I at 51, 52. He was received as an expert witness without objection. Id. at 53. He testified that in preparing the appraisal for the

1450 Property he assumed the lease with the Torah Academy was a valid lease, based on his interview with Hirsch. Id. at 63, 66.

Gabriele testified that generally the sales comparison approach is the accepted method of valuation with respect to properties similar to the 1450 Property. Tr. I at 65. However, because there were no comparable sales for the property in the immediate area, he used the income capitalization approach to value the property. Id. at 65-66, 72. Gabriele explained that the income capitalization approach calculates the present value of future benefits, as it measures a property's income generating potential. Id. at 56. Using the Income Capitalization approach, Gabriele concluded that the value of the 1450 Property as of December 1, 2004 was   $ 525,000.000. Id. at 71-72.

Gabriele's insistence upon the Income Capitalization approach to determine the valuation of the subject property was unreasonable under the circumstances of this case. Gabriele maintained that the existence of the lease between Hirsch and the Yeshiva Ruach Hatorah justified his use of this approach. However, as the defendant has established, since its federal tax lien has priority, the 1450 Property must be valued as if there were no lease.  In addition, as set forth in the Third Amended Disclosure Statement (Valuation Hearing Exhibit B), the Yeshiva planned to purchase the 1450 Property and thereafter nullify the lease. Under either of these scenarios, the use of a valuation method which relied upon the pre-existing lease was not justified. When confronted with the defendant's position that the lease was subordinate to its lien, Gabriele stated that he was not aware of this fact until after he had completed his appraisal. Tr. I at 67. He concluded that the value of the property with the lease in place was $200,000.00. Id.

On the whole, Gabriele's testimony on the valuation of the 1450 Property was not credible. He did not include a survey of properties or provide any specific details when questioned about the properties he examined before determining that the sales comparison approach was not the best methodology to use. Tr. I at 78, 80; Tr. IV at 34. He also failed to provide an adequate response when asked about Haberman's and Dean's comparables. For example, Gabriele stated that Haberman's & Dean's comparables were not comparable because they were in nicer locations and in better condition than the subject property. Tr. IV at 34, 35. However, Haberman and Dean each testified that it was a standard practice to make adjustments based on more desirable locations. Gabriele failed to include the results of his survey of market rents in his appraisal report or provide documentation in support of the estimated expenses and income that he used to compute potential gross income as part of his income capitalization approach valuation. Tr. I at 81-82; Valuation Hearing Exhibit 2.

Gabriele's testimony was also inconsistent in several respects. He testified that the value of the 1450 Property would be the same regardless of whether or not there was a lease. Tr. I at 66-68. However in his appraisal report he stated that the lease had a negative impact on the value of the property. Valuation Hearing Exhibit l at 22. In addition, on January 9, 2006, Gabriele stated that he believed that the property had declined in value based on the rise in interest rates. On January 23, 2006, he testified that the value of the property was the same that day as the day he valued it.

Dean testified as an expert witness in support of the IRS claimed valuations. Dean had been employed with the IRS as a Valuation Specialist, primarily in real estate appraisals, since 1997. He testified that he was responsible for preparing appraisals of multi-

11

family and commercial properties in New York, New Jersey and Connecticut. Tr. I at 104. Dean used the sales comparison method of valuation for the 1450 Property and valued the property as though it were not subject to the Torah Academy lease.  Based upon the sales of three properties located at 205 Ocean Avenue, 2140 Ocean Avenue and 2523 Ocean Avenue, Dean determined the property was worth $850,00 as of August 10, 2005. Id. at 109-110; Valuation Hearing Exhibit E. Dean supplemented his valuation by examining additional comparable sales of Ocean Avenue properties in January 2006 and concluded that the 1450 Property was worth in excess of $850,000 as of the date of the valuation hearing. Tr. I at 110. Although Dean qualified as an expert witness, his experience was less substantial than that of Haberman and Gabriele, and his appraisal reports were less thorough than those of Haberman and Gabriele.

       Haberman testified as to the valuation of the 1450 Property on behalf of Nachama Hirsch. He holds a degree in accounting and has taken various courses in appraising. He is also a New York State Certified General Real Estate Appraiser and a member of the Appraisal Institute. Like Dean, Haberman used the sales comparison method. Haberman testified that the use of the income capitalization approach for this property was not the most appropriate. Tr. III at 9. Haberman believed that an owner/occupied building was the most typical use for this property. Haberman testified that Gabriele's report did not contain sufficient income and expense data to support an income capitalization approach. Haberman found that there was no actual supported income and expenses from the subject property. Id. at 10.

       Haberman prepared a list of seven sales which he estimated were good comparable sales. Of these, Haberman referred to three which he regarded as most comparable:

| Address | Selling Price |
|---|---|
| 986 East 19th Street | $995,500.00 |
| 1059 East 14th Street | $750.000.00 |
| 1909 Avenue L | $779,000.00 |

Each of these three-family homes was located less than six tenths of a mile from the subject property. Haberman further testified that his analysis of comparable sales in the area of the 1450 Property reflected an appreciation of home prices in excess of twenty five per cent (25%) between 2004 and 2005. Tr. III at 19, 23. Based on his analysis of comparable sales and market trends, Haberman stated he believed that Gabriele's valuation of $525,000.00 was too low.

Hirsch also testified at the valuation hearing. He stated that he had twenty years experience in purchasing and renovating troubled properties. Hirsch did not appear to be currently abreast of market conditions, however.[3] With regard to this subject property, Hirsch testified that he had purchased it in 1986 and operated it as a residential apartment building until 1998. Hirsch claimed that due to storm damage and apartment vacancies, he decided to market it for community facilities, and rented it to the Torah Academy. Hirsch further testified that the Torah Academy then renovated the building. Tr. IV at 11. Hirsch estimated that the property would need to be configured for residential use, and that would entail between $100,000.00 and $150,000.00 in renovation costs. Hirsch valued the property at $525,000.00.

---

[3] Hirsch testified that he currently was not involved in this business on a full time Basis:

"Once this litigation is over, I am going to be going back
into the business that I do full time."

Tr. IV at 5.

Upon review of the testimony of these witnesses and all the documentary evidence, the Court finds that the 1450 Property had a minimum present market value of $800,000.

2.  The 2115 Property

With regard to the 2115 Property, Gabriele testified that he personally inspected this property. He found four comparable sales as a best indicator of value. Tr. I at 54-55. He concluded the property value was $500,000.00 as of December 1, 2004 using the comparable sales approach. Id. at 56. Gabriele claimed to have reviewed sales comparison figures from a couple of dozen properties before settling on four properties. Id. at 59. Gabriele failed to include actual expense amounts as part of his calculation. At the hearing on January 9, 2006, Gabriele testified that he believed that 2115 Avenue I property had declined in value since his valuation date of January 2004, but could not state a specific value for the property. Tr. I at 97 . Two weeks later, as a rebuttal witness, Gabriele testified that the value of the property was the same as the day he valued it on December 2004. Tr. IV at 47-47. In support of this position, Gabriele made adjustments to six of the sales upon which Haberman relied in his appraisal and one of the sales upon which Dean had relied. Gabriele used a downward adjustment of $400,000 as a cost of renovating the home on the property. Tr. IV at 56-57. This figure appeared to be speculative, as Gabriele stated he had not checked the building permits for any of those comparable sales to ascertain the anticipated renovation costs on those properties.

Dean testified that the 2115 Property had a minimum value of $900,000. Dean also used the sales comparison method of valuation and used the sales of three homes at 2103 Avenue I,  2314 Avenue I and 2608 Avenue I to reach his determination of value for the 2115

Property. Tr. I at 119; Valuation Hearing Exhibit G.

Haberman used the same approach as Dean and valued the 2115 Property at $825,000. In his testimony, Haberman stated that the comparable sales which Gabriele used to support his valuation for the 2115 Property were for properties located substantially further away from the subject property site than those Haberman utilized. Tr. III at 24. Haberman further testified that Gabriele's conclusion of value with respect to the 2115 Property did not fairly reflect all recorded market transactions in the surrounding area, that the demand for this type of housing in the subject area was very strong and that Gabriele's valuation was too low. Id. at 25, 26 and 29.

Hirsch testified that he has lived at the subject property for eight years, and that the value of the subject property should be lower than Haberman's valuation because the property was in very poor condition and the real estate market had softened dramatically. He stated that the property needed substantial repairs, including the replacement of walls, stairs and floors. He estimated the total cost of these renovations would be approximately $400,000.00, significantly higher than the renovation costs of $100,000.00 proffered by his expert, Gabriele.

Upon review of the testimony of these witnesses and all the documentary evidence, the Court finds that the 2115 Property had a minimum present market value of $825,000.

    3.    The 2914 Property

Hirsch owns a third piece of property which is an unimproved vacant strip of land located at 2914 Avenue I, Brooklyn, New York. Neither Gabriele nor Haberman prepared published opinions regarding this property. Using the sales comparison method of valuation,

Dean analyzed the sales of approximately forty similarly sized properties and valued the property located at 2914 Avenue at $20,000 as of August 10, 2005. Tr. I at 121; Valuation Hearing Exhibit H. Dean testified that Hirsch owned the Midwood Holding Company, Inc., which acquired the property in April 1991 at a price of $24,500.00. Tr. I at 121; Exhibit H. The only other evidence before the Court on the value of this property was Gabriele's testimony that, from a "very quick look at the property," he valued it at $1,000. Tr. I at 72-73,74. The Court accepts Dean's testimony and finds the 2914 Property had a present market value of $20,000.00.

## CONCLUSION

For the reasons set forth above, the Court finds that the real property located at 1450 Ocean Avenue, Brooklyn, had a minimum present market value of $800,000; that the real property located at 2115 Avenue I, Brooklyn, had a minimum present market value of $825,000; and that the real property located at 2914 Avenue I, Brooklyn, New York had a present market value of $20,000.00. The IRS Proof of Claim is allowed as filed. The Application for an order pursuant to Section 502 of the Bankruptcy Code disallowing, expunging, modifying and/or reducing the IRS Proof of Claim is denied in all respects.

IT IS SO ORDERED.

Dated: Brooklyn, New York
      September 27, 2006

                                            s/Dennis E. Milton
                                            DENNIS E. MILTON
                                            United States Bankruptcy Judge